**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-62-TS |
| | ) | |
| ANNA LAFAIVE | ) | |

## OPINION

The Defendant, Anna LaFaive, is charged in a four-count indictment with bank fraud, 18

U.S.C. § 1344, and aggravated identity theft, 18 U.S.C. § 1028A. The government has filed a

notice of intent to use other crimes, wrongs, or acts as evidence pursuant to Federal Rule of Civil

Procedure 404(b) [DE 47]. The Defendant objects to the introduction of the evidence, arguing

that it is not proof of the alleged schemes to defraud.

## BACKGROUND

**A.  Indictment Charges**

On July 12, 2007, the Defendant was charged by way of indictment with devising and

intending to devise a scheme and artifice to defraud Fifth Third Bank, Star Financial Bank, and

JP Morgan Chase Bank. The indictment alleges that in May 2007 the Plaintiff, using the name

and social security number of Phyllis Jean Click, opened a checking account at Fifth Third Bank

using a counterfeit check drawn on JP Morgan Chase Bank. Subsequently, the Defendant

withdrew the deposited funds using checks made payable to "Cash" and by making purchases

with a debit card. (Counts 1 and 3.) The Plaintiff repeated this scheme when she opened a

checking account in the name of Phyllis J. Click at Star Financial Bank. (Counts 2 and 4.)

**B.  Other Crimes, Acts**

In its notice, the government states that it intends to present evidence of other wrongs for the purpose of establishing the Defendant's knowledge and intent. The government anticipates that the Defendant's parole officer would testify that she pleaded guilty under the name Anna Marie Rodriguez to Felony Forgery and Uttering and Publishing, and also to Felony Financial Transaction Devices False Statement of Identity, and was sentenced in August 1995 in Pontiac, Michigan.

The government also anticipates presenting evidence of checks seized on June 21, 2007, from the Defendant's Michigan residence and the vehicle that she had been observed driving and had the keys to. These checks were in various altered stages. Agents also seized items of identification in the names of Ann Breguet and Alexandria Cunningham. The government anticipates that a computer forensic expert would testify about checks in various altered stages found on a computer seized from the Defendant's home.

The government intends to introduce testimony from agents that the Defendant, at the time of her arrest, made spontaneous statements that she could get fake documents from Puerto Rico.

The government also provides notice of other bad acts that it contends are offered to establish the Defendant's motive. Specifically, the Defendant's parole officer, who talked to the Defendant about more than $50,000 of restitution that she owed in her Michigan state case, would testify that she told him shortly before her arrest on June 21, 2007, that her sister who lived in Indiana could give her a loan to pay the restitution. Additionally, in 2006 and 2007, the Defendant received past due notices for defaulting on her home mortgage payments, notice regarding avoiding foreclosure and cancellation of home insurance due to nonpayment in

2

connection with her Michigan residence. These notices were provided to the Defendant under the name Ann Marie Breguet.

The government argues that all the evidence, with the exception of the state court criminal convictions, is further admissible as evidence that is inextricably intertwined with the charged offenses.

**DISCUSSION**

The Defendant argues that neither Federal Rule of Evidence 404(b) or the doctrine of inextricably intertwined (also known as intricately related) evidence allows for the admission of the evidence proffered by the government in its notice. The Defendant submits that none of the evidence is admissible to establish the "finite and detailed scheme alleged in the four count indictment." (DE 54 at 1.)

Federal Rule of Evidence 404(b) provides, in relevant part,

Evidence of other crimes, wrongs, or acts is not  admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Civ. P. The Seventh Circuit has articulated a four-prong test for admissibility of Rule 404(b) evidence, which requires a court to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice. *United States v. Denberg*, 212 F.3d 987, 992–93

(7th Cir. 2000).

If uncharged activity does not satisfy the requirements of Rule 404(b), it may still be admissible if it is intricately related to the facts of the case before the court. *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995); *see also United States v. Gibson*, 170 F.3d 673, 680 (7th Cir. 1999). Under the intricately related doctrine, the admissibility of uncharged conduct turns on:

> whether the evidence is properly admitted to provide the jury with a complete story of the crime [on] trial, . . . whether its absence would create a chronological or conceptual void in the story of the crime, . . . or whether it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove any element of, the charged crime.

*United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995) (brackets in original, internal quotation marks and citations omitted).

Cases applying the intricately related doctrine have recognized that evidence concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime, is not evidence of "other acts" within the meaning of Rule 404(b). *See United States v. Zarnes,* 33 F.3d 1454, 1469 (7th Cir. 1994); *United States v. Robinson*, 161 F.3d 463, 470 (7th Cir. 1998) ("To the extent that the evidence at issue falls outside the scope of Rule 404(b), we will not deprive a party from presenting evidence when its exclusion leaves a conceptual or chronological void."). Rule 404(b) is designed to address a particular evidentiary problem, guarding against the admission of prior acts solely to prove bad character, because history has shown that this type of evidence is of negligible value, inflicting more unfair prejudice than revealing helpful truths. *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002). "Evidence of acts that are joined with the crime itself, however, occupy a different stature

4

by nature." *Id.* The only limitation on the admission of intricately related evidence is the balancing test required by Rule 403. *Unites States v. Hilgeford*, 7 F.3d 1340, 1345 (7th Cir. 1993). This test permits the exclusion of relevant evidence if its prejudicial effect substantially outweighs its probative value.   *Id.*

## A.  Intricately Related Evidence

Bank fraud is a specific intent crime. *United States v. Ryan*, 213 F.3d 347, 350 (7th Cir. 2000); 18 U.S.C. § 1344(1) (prohibiting the knowing execution, or attempt to execute, a scheme or artifice to defraud a financial institution). It is the scheme, devised with the intent to defraud, that is illegal. *See United States v. LeDonne*, 21 F.3d 1418, 1426 (7th Cir. 1994). "The broad range of schemes covered by the statute is limited only by a criminal's creativity." *United States v. Norton*, 108 F.3d 133, 135 (7th Cir. 1997). The government is required to prove that the defendant engaged in a pattern or course of conduct designed to deceive a financial institution with intent to cause actual or potential loss. *Id.*, 21 F.3d at 1427–28.

The scheme charged in the indictment here is that the Defendant opened a checking account using the identifying information of Phyllis Click, who is a deceased relative of the Defendant, and deposited a worthless, or counterfeit, check. The bank credited the Click checking account in the amount of the worthless check. The Defendant then accessed the money through debit card purchases and by presenting checks made payable to cash. The Defendant submits, in defense of these charges, that she was not involved in the alleged schemes to defraud.

Introducing checks in various altered stages, evidence of false identifications, and statements about obtaining fake documents, would paint for the jury a complete picture of the

5

scheme and the Defendant's actions to carry out the scheme. The acts of altering checks and using false identification and documents are joined with the crime itself. These acts, in turn, go to the specific intent element of the charged conduct.

The government must establish that the Defendant acted willfully and with specific intent to deceive or cheat, usually with the purpose of getting financial gain or causing financial loss. *See Ryan*, 213 F.3d at 350 (describing the specific intent requirement). As this intent can be proven by circumstantial evidence and by inferences drawn from the scheme itself, *id.*, the government must be allowed to present to the jury a complete picture of the scheme. But there is no indication in the current record whether the altered checks and false identification documents are actually related to the scheme alleged in the indictment. For example, the government does not indicate whether the recovered checks were altered using the same process that the counterfeit check used to open the Click account underwent, whether the substantive changes to the checks were the same, or whether there is some other link between the recovered checks and the checks involved in the charged schemes. Likewise, the government has not attempted to explain the connection between identifying information of Ann Breguet and Alexandria Cunningham to the alleged scheme or to the use of Phyllis Click's identifying information.

Without knowing how the checks and identifying information are connected to the charged scheme, the Court cannot properly determine whether the probative value of this evidence is substantially outweighed by it prejudicial effect.

While the Court preliminarily rules that the proffered evidence of altered checks and false identifications is not admissible, this ruling is subject to change if facts develop to demonstrate that the evidence is "so blended or connected that it incidentally involves, explains

the circumstances surrounding, or tends to prove any element of, the charged crime" of bank fraud or aggravated identity theft. Moreover, this evidence may still be admissible under Rule 404(b) even if it is not intricately related to the charges in the Indictment. The Court's Rule 404(b) analysis follows *infra*.

The other evidence that the government contends is intricately related, that of the Defendant's financial problems and her statements that she could get a loan from a sister in Indiana, are not so blended with the charged fraud and theft, do not tend to prove an element of those crimes, and are not necessary to complete the story of the Defendant's fraud and identification theft. But this evidence may still be admissible if it meets the test for admission under Rule 404(b), as discussed below.

## B. Rule 404(b) Evidence

The evidence at issue for admission pursuant to Rule 404(b) are the Defendant's Michigan convictions, her indebtedness for restitution and mortgage payments, and the altered checks and false identification documents recovered from her home and a car that she had been driving.

### 1. Prior Convictions

To convict a defendant in criminal cases, the government must prove each element, even those that the defendant does not specifically contest, beyond a reasonable doubt. *Estelle v. McGuire*, 502 U.S. 62, 69 (1991). As already noted, bank fraud is a specific intent crime. To prove that the Defendant committed aggravated identity theft in violation of 18 U.S.C. § 1028A,

the government must prove that the Defendant committed the charged bank fraud and, in the course of doing so, knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person. 18 U.S.C. § 1028A. Because the government bears the burden of proving all elements of the charged crimes, intent can be shown under Rule 404(b) even if the defendant does not raise an issue of intent. *See United States v. Draiman*, 784 F.2d 248, 254 (7th Cir. 1986) ("Mail fraud is a specific intent crime, and that intent can be shown under Fed. R. Evid. 404(b) even when the defendant, possibly anticipating the damage from other-crimes evidence, seeks to avoid that damage by making no issue of intent.")

Testimony concerning the Defendant's previous convictions for fraud are probative of her intent to commit the crimes charged and will help the jury analyze this element. It is also probative of her knowledge. As the evidence is offered to prove something other than the Defendant's propensity to commit the crimes charged, it satisfies the first prong of the four-part test for admissibility of other acts under Rule 404(b). However, "[s]atisfying the first part of the test does not guarantee admissibility." *United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996).

The Seventh Circuit has held that when evidence is offered to prove intent, the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent. . . .  The prior acts need not be duplicates of the one for which the defendant is now being tried." *United States v. Lloyd*, 71 F.3d 1256, 1264–65 (7th Cir. 1995). "[S]imilarity means more than sharing some common characteristics; the common characteristics must relate to the purpose for which the evidence is offered." *Long*, 86 F.3d at 84 (quoting *United States v. Torres*, 977 F.2d 321, 326 (7th Cir. 1992)). In fraud cases, evidence of prior frauds are properly

8

admitted as evidence of intent where the prior frauds involve similar conduct. *See United States v. Gerard*, 926 F. Supp. 1351, 1361–62 (N.D. Ill. 1996) (listing cases). "In such cases, the prior act evidence actually makes a finding of intent more likely than not—thereby allowing the factfinder to transcend the impermissible propensity inference—because the similarity of conduct suggests consciously and deliberately designed action." *Id.*, 926 F. Supp. at 1362. "Absent this sort of similarity, evidence of prior frauds allows only the inference that where one has committed frauds in the past he or she is likely to do so again. This is nothing but a propensity inference." *Id.*

The Court does not have sufficient information to determine whether the 1995 convictions bear the requisite similarity to the charged offenses to transcend the impermissible propensity inference. The details of the conduct that led to the state convictions has not been revealed. This lack of detail, because it makes a determination of relevancy impossible, necessarily affects the balancing of the probative value to the danger of unfair prejudice.

In addition, there is support in the Seventh Circuit for the proposition that if the government has sufficient evidence to establish the Defendant's intent without the introduction of other acts evidence, it is not reasonably necessary to the government's case and the risk of prejudice that accompanies such evidence will not be justified. *See United States v. Harrod*, 856 F.2d 996, 1002 (7th Cir. 1988). In *Harrod*, the court addressed the defendant's argument that the government had sufficient evidence to establish its case without the introduction of other acts evidence. The court found that evidence of the defendant's prior stolen check and stolen bond scheme crimes were reasonably necessary to establish his *modus operandi* and his intent in the commission of bank fraud. *Id.*, 856 F.2d at 1003. However, the court noted its decision in *United*

*States v. Dolliole*, 597 F.2d 102 (7th Cir. 1979),

> in which we stated that if the Government has "ample evidence to establish an element of the crime, . . . the risk of prejudice which accompanies the admission of such evidence will not be justified." *Id.* at 106 (footnote omitted). In *Dolliole*, we noted that it is "not easy to formulate precisely when the quantum of evidence eliminates the need for the prior crime evidence." *Id.* at 106. However, we ultimately concluded in *Dolliole* that while the Government presented other evidence aside from the prior acts, "the prior crime evidence contributes to 'more dependable proof of his [the defendant's] knowledge and intent' and was therefore 'reasonably necessary' to the government's case." *Id.* at 106 (quoting *United States v. DiZenzo*, 500 F.2d 263, 266 (4th Cir.1974)).

*Harrod*, 856 F.2d at 1002 (brackets in original).

Here, the scheme used by the Defendant necessarily evidences an intent to defraud. No reasonable person would believe that a defendant who used the identifying information of a dead relative to open a bank account, deposited a counterfeit check, and then withdrew funds from the account was not trying to defraud the banks or did not know that what she was doing would cause the bank to lose money. Perhaps it is because of this that the Defendant's contention is that she "was not involved in the schemes to defraud as alleged in the Indictment." (Def. Resp. 2, DE 54.) Thus, knowledge and intent are not the focal points of this case and the probative value of evidence of prior convictions for these purposes (the only purposes identified by the government) is substantially outweighed by its prejudicial effect.

**2.      Evidence of the Defendant's Indebtedness**

The government contends that evidence of the Defendant's indebtedness, in the form of outstanding restitution and mortgage payments, is directed toward establishing her motive for devising the scheme to defraud the bank. This is a purpose that is specifically identified in Rule 404(b) as permissible to support the introduction of other bad acts. Financial problems are

10

appropriate proof of a motive to commit crimes for financial gain. *See United States v. Bardsley*, 884 F.2d 1024 (7th Cir. 1989). In *Bardsley*, the defendant was on trial for falsification of postal document, which allowed him to obtain United States Postal Service monies for his own purposes. Applying Rule 404(b)'s proof of motive exception, the Seventh Circuit upheld the trial court's admission of evidence that the defendant wrote a check without having sufficient funds. 884 F.2d at 1027–28. The check was probative of the defendant's financial problems, which, in turn, was probative of his motive to falsify documents to obtain money. *Id.*

The Defendant argues that evidence of her financial problems should not be admitted because "simple indebtedness . . . does not necessarily supply motive to perpetrate a criminal fraud." (DE 54 at 7.) The Court is not persuaded by this argument, as this could be said of all motive evidence, no matter how plausible it is. In *United States v. Kuzlik*, 468 F.3d 972, 974–75 (7th Cir. 2006), the Seventh Circuit specifically addressed the prejudicial effect of evidence of financial difficulty that was admitted to establish motive. The court found no overlap between the evidence of the defendant's motive to commit fraud and his propensity to commit fraud. 468 F.3d at 975 (finding that the "sorry state of [the defendant's] finances, his debts, default judgments, and bank overdrafts, was offered as evidence of his motive to embezzle [money], not as evidence that [he] had a taste or compulsion for financial fraud"). The court also noted that the trial court "cured even the remote potential for unfair prejudice" by giving a limiting instruction that the jury was presumed to follow. *Id.*

The Court finds that a jury will have no less trouble in this case distinguishing between motive and propensity, particularly if so instructed by the Court. Because evidence of financial problems is not the kind of evidence that will induce a jury to decide the case on improper

grounds, the evidence of indebtedness is not so unfairly prejudicial that it outweighs its probative value. But this is not the end of the inquiry; as the Defendant points out, there are certain aspects of the evidence of indebtedness in this case that pose a heightened risk of prejudice.

The Defendant argues that the 1995 conviction from which the restitution stems, and the fact that the foreclosure notices applied to the Defendant under a different name, Ann Marie Breguet, is highly prejudicial information. The Court agrees that these facts are more prejudicial than indebtedness alone. It may be that the information of indebtedness is disclosed without revealing these specific facts. In fact, testimony about the indebtedness may be avoided altogether. The Defendant indicates in her response brief that, in the event the evidence is deemed admissible, the Defendant may be willing " to stipulate to the fact that the Defendant owed a certain sum of money and was, therefore, indebted," and also "to stipulate to the fact that there were issues with regard to payment of a home mortgage." (DE 54 at 6, 7.) Because motive is not an element of the offense, and therefore not something that the government must prove beyond a reasonable doubt, it stands to reason that the Defendant can avoid testimony going to this evidence by stipulating to the evidence that supports the motive. If the Defendant does not offer such a stipulation, evidence of the Defendant's financial problems will most likely be admissible in some form, and may be accompanied by a limiting instruction if so requested by the Defendant.

**3.  Altered Checks and False Identifications**

The government contends that evidence of checks in various altered stages and of false identification documents is directed toward establishing the Defendant's knowledge and intent.

As already stated, the charged offenses are specific intent crimes, making intent an element that the government must establish beyond a reasonable doubt. And although the Court was not able to say with certainty that the altered checks and false identification documents related to the specific scheme that is charged in the indictment, altering checks and obtaining identifying information in other names is activity that is sufficiently similar to the charged crimes to support an inference of criminal intent. The Defendant argues that the evidence fails to meet the third prong of the four-part test for admission under Rule 404(b) because it is not sufficient to support a jury finding that the defendant committed the similar act. The Defendant submits that "there is no tie in specifically to the Defendant," and "no indication as to other individuals who may or may not have had access to the various locations" where the checks and documents were located. (DE 54 at 4–5) (arguing that "[a] simple assertion that these documents or items were found is not sufficient to establish that the Defendant was the actor").

Although other individuals may have had access to the places where the documents were located, there is a sufficient basis to believe that the Defendant also had access, if not primary access, to these areas. That other person may have also had access is an argument regarding the weight of the evidence that the Defendant can make at trial.

Finally, the Court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Evidence is unfairly prejudicial only to the extent that it will cause a jury to decide the case on improper grounds. *United States v. Jones*, 248 F.3d 671, 676 (7th Cir. 2001). Where the evidence presented is primarily directed toward elements of the crime that the government is required to establish, the jury's use of Rule 404(b) evidence on the relevant issues does not constitute unfair prejudice. *Id.* Further, a limiting instruction given

by the court is effective and proper to reduce or eliminate the potential of the jury to use the evidence to infer a propensity of the Defendant to devise schemes to defraud banks or to use another person's identifying information to carry out the scheme. *Id.; see also United States v. Denberg*, 212 F.3d 987, 994 (7th Cir. 2000).

## CONCLUSION

For the foregoing reasons, the Court preliminary finds that the following evidence is admissible: evidence of the Defendant's indebtedness, provided that it does not refer to her criminal record or to her use of an alternative identification; evidence of checks in various altered stages and of false identification documents. The Court will consider any additional argument regarding these rulings or the admission of the state court criminal convictions during the trial.

ENTERED: July 21, 2008.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT