# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-62 |
| | ) | |
| ANNA LaFAIVE | ) | |

## OPINION AND ORDER

The Defendant, Anna LaFaive, is awaiting sentence for convictions for bank fraud and aggravated identity theft. This matter is before the Court on the Government's Motion for Upward Departure [DE 80], Defense Response [DE 87], and Government Reply [DE 88]. The parties indicated during a March 24, 2009, status conference with the Court that all arguments regarding the Government's Motion for Upward Departure had been presented, and they welcomed a separate ruling on the Motion in advance of the sentencing hearing.

**A.  Background**

On July 12, 2007, the Government charged the Defendant with two counts of bank fraud in violation of 18 U.S.C. § 1344, and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A. The Indictment also contained a forfeiture allegation.

On July 22, 2008, the Government proceeded to trial against the Defendant. The Government presented evidence that the Defendant obtained identifying documents in the name of her deceased step-sister, Phyllis Click. She then used these forms of identification to open accounts at Star Financial Bank and Fifth Third Bank in Fort Wayne, Indiana. The Defendant deposited counterfeit/worthless checks that she had manufactured into the account. The checks were made payable to Phyllis J. Click and were drawn on a JP Chase Morgan Bank, on the

account of AMC Mortgage Services. Bank surveillance photographs captured the transaction. The Defendant then accessed the money in the Fifth Third account by using a debit card issued in the name of Phyllis Click and making cash withdrawals. The exhibits admitted at trial included the Indiana identification card and social security verification document that the Defendant obtained in the name of Phyllis Click, relevant bank documents, photographs from the bank surveillance cameras, debit card receipts, scanned checks in various altered states bearing similar information to that contained on the two counterfeit checks used to open the Click accounts, a 1990 death certificate for Phyllis J. Rogers, photographs of merchandise purchased with the debit card, and a wig, stocking, glasses, and makeup consistent with the person shown in the bank surveillance photographs.

The Defendant's theory of the case was that the real Phyllis Click is still alive and committed the fraud, and that she set up the Defendant to appear to be the perpetrator of the fraud.

On July 24, 2008, a jury returned guilty verdicts on all four counts of the Indictment. The jury also deliberated the forfeiture allegation and found that the Defendant obtained $64,863.24 as a result of the bank fraud involving Fifth Third bank.

**B.     The Presentence Investigation Report**

On September 19, 2008, a probation officer prepared a Presentence Investigation Report (PSR or the Report). The Report calculated the total offense level for the bank fraud offenses at 17. The Defendant's past criminal convictions resulted in the assessment of 3 criminal history points. Because the Defendant was on parole with the Michigan Department of Correction when

she committed the federal bank fraud and aggravated identity theft, the probation officer added 2 points pursuant to U.S.S.G. § 4A1.1(d), resulting in 5 criminal history points. Five criminal history points corresponds to Criminal History Category III. This Criminal History Category, when combined with base offense level 17, results in an advisory guideline range of 30–37 months of imprisonment. The probation officer did not calculate a guideline sentence for the aggravated identity theft convictions because they require the imposition of a mandatory 2-year sentence of imprisonment to be served consecutive to term of imprisonment imposed for the fraud. The two mandatory sentences may run concurrent with each other.

### C.     Motion for Upward Departure

The Government requests that the Court impose a sentence above the advisory guideline range on grounds that the Defendant's criminal history category, although correctly calculated in the PSR, seriously underrepresents the seriousness of the Defendant's criminal history and the likelihood that she will commit other crimes. In support of its Motion, the Government cites the fact that the Defendant has 13 convictions in the State of Michigan stemming from separate activity that she engaged in from September 1989 to November 1992, but that she was only assessed criminal history points for 1 of those convictions because they all shared the same arrest and conviction dates. The Government also notes that nearly all 13 of these convictions involved some form of fraud, deceit, or dishonesty similar to the instant offense. The Government argues that if the Defendant would not have been sentenced on the same day for 13 convictions, she would have received at least 8 additional criminal history points, elevating her Criminal History Category to VI and her imprisonment range to 51–63 months.

In response, the Defendant asks the Court to impose a sentence that is consistent with the applicable advisory sentencing guidelines. The Defendant argues that the guideline sentence of just over seven years (which she calculates by combining the high end of the PSR advisory range for the bank fraud offenses with statutory two-year terms for the aggravated identity theft offenses) reflects the seriousness of the current offense, promotes respect for the law, and provides just punishment for the offense, and that a higher sentence is greater than necessary to satisfy the factors set forth in 18 U.S.C. § 3553(a). The Defendant contends that "there is adequate deterrence to criminal conduct by the defendant upon a sentence of over seven years while protecting the public from further crimes of the defendant." (Resp. 3, DE 87.)

**D.     Criminal History Analysis**

Chapter 4 of the United States Sentencing Guidelines is devoted to the impact of a defendant's past criminal history on sentencing. The introduction to this section states that a defendant's record of past criminal conduct is directly relevant to the purposes of punishment that are set forth in 18 U.S.C. § 3553(a)(2). The introduction goes on to state:

> A defendant with a record or prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment. General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence. To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered. Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

U.S.S.G., Chapter Four, Part A, *Introductory Commentary*.

Section 4A1.1 describes how to calculate points for a defendant's prior sentences, which, in turn, determine the Criminal History category. For example, subsection (a) instructs that 3

points are added for "each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). Guideline § 4A1.2 provides definitions and instructions regarding the computation of criminal history points, and must be read together with § 4A1.1. Section 4A1.2(a)(2) states that if a defendant has multiple prior sentences, the court must determine whether those sentences are counted separately or as a single sentence, using the following criteria:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) *the sentences were imposed on the same day*. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2) (emphasis added).

The Application Notes to § 4A1.2 recognize that "[c]ounting multiple prior sentences as a single sentence may result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public. In such a case, an upward departure may be warranted." U.S.S.G. § 4A1.2, Note 3.[1] Note 3 provides the example of a defendant convicted of a number of serious non-violent offenses committed on different occasions, but the resulting sentences were counted as a single sentence, either because the offenses were contained in the same charging instrument or because the defendant was sentenced for these offenses on the same day. In such a case, the Note states that "the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal

---

[1] While the Seventh Circuit considers traditional guideline departures obsolete in a post-*Booker* era, a sentencing court may continue under § 3553(a)(5) to consider the Commission's policy statements on departures in determining whether the guidelines produce the best sentence in a particular case.

history or the frequency with which the defendant has committed crimes."

The scenario that is presented in the guideline example is the same scenario that exists in this case. Paragraphs 51 through 76 of the PSR report 13 separate convictions for criminal activity that the Defendant engaged in on 13 difference occasions. However, the convictions were counted as a single sentence for purposes of assessing points because the Defendant was sentenced for these offenses on the same day. According to the Michigan convictions, the Defendant engaged in criminal activity on September 19, 1989, May 8, 1990, April 8, 1991, October 13, 1991, October 21, 1991, November 19, 1991, January 8, 1992, March 31, 1992, September 10, 1992, October 2, 1992, October 11, 1992, October 16, 1992, and November 23, 1992. Warrants were obtained in December 1992 after authorities discovered evidence of fraud-related crimes during the execution of a search warrant to look for drugs in a home occupied by the Defendant and her husband. The Defendant was finally arrested on October 20, 1994, and sentenced on August 11, 1995. The criminal conduct included making several false insurance claims, obtaining false title to a stolen vehicle, not depositing a retail employer's receipts into the bank, presenting false papers to the Secretary of State to get a friend's car out of impound, using a false name to obtain credit cards, and forging a judge's signature on divorce-related papers to receive an insurance settlement.

To downplay the significance of a criminal history containing 13 convictions, the Defendant notes that several of the convictions could be grouped together because they involved criminal activity that occurred within a short period of time. For example, the convictions detailed in paragraphs 56, 58, and 60 occurred over a 5-week period between October 13 and November 19, 1991. Further, the convictions detailed in paragraphs 66, 68, 70, 72, and 74

occurred over a 10-week period between September 10 and November 23, 1992. Additionally, the Defendant argues that all of conduct occurred while she was between 28 and 31 years old and "was married and influenced by Michael Rodriguez." (Resp. 4, DE 87.) The Defendant notes that she did not have any criminal history prior to this, except for one bad check charge in 1988, and that she had no arrests for the 13 years between her October 20, 1994, arrest and the June 2007 arrest on the current federal charges. Thus, she contends that her prior criminal history occurred solely over a three-year period, and it does not represent a continuing pursuit of criminal livelihood. She also submits that lengthening her sentence will do nothing to ensure that restitution is timely paid.

In trying to accomplish the purposes of sentencing set forth in § 3553(a)(2), the Court must consider the nature and circumstances of the offense and the history and characteristics of the Defendant, 18 U.S.C. § 3553(a)(1), as well as other factors, including the kinds of sentences available and the sentencing guidelines, 18 U.S.C. § 3553(a)(3)–(5).

In this case, the sentencing guidelines are not the most persuasive and accurate indicator of the sentence that is sufficient to comply with the statutory purposes of sentencing because Criminal History Category III significantly underrepresents the seriousness of the Defendant's criminal history. The imposition of 3 points for 13 felony convictions does not accurately reflect the frequency with which the Defendant committed crimes, even if some of the crimes over the 3-year period were committed relatively close together in time. A sentence that fails to take into account the frequency of the Defendant's criminal conduct would not support the goal of general deterrence, which requires that a clear message be sent to society that repeated criminal behavior will increase the need for punishment with each recurrence. With no repercussions for having

committed a dozen crimes in addition to the one for which points were assessed, any message directed toward the goal of general deterrence is lost. The nearly ten-year gap from the time the Defendant was released from custody on the Michigan sentences and the time she engaged in the criminal conduct that formed the basis of the offense of conviction here does not negate the impact (or the frequency) of the actual behavior in which she did engage.

Neither does the reported criminal history category accurately reflect the likelihood of recidivism and the need to protect the public from further crimes of this Defendant. The Defendant committed 6 of the 13 criminal acts while she was on probation for the 1989 conviction, demonstrating a clear lack of respect for the law. (PSR ¶ 49) (indicating that the Defendant was discharged from probation on November 27, 1991). In addition, the Court can take no comfort in the fact that the criminal activity ceased in late 1992 because that is when the Defendant moved to Puerto Rico and changed her name. Neither the Defendant's advance in age nor her divorce from her husband appear to have reduced the risk that this Defendant will engage in further fraudulent activity. She committed the latest bank fraud while married to a different man and after aging ten years. The Defendant appears to have invested significantly more time and energy into schemes to obtain money fraudulently than she has through legitimate employment. (PSR ¶¶ 117–121) (reporting sporadic employment from 1998 to 2002). The record also reveals that, in addition to committing crimes while on probation, the Defendant deceived her parole officer regarding her residence. The history and characteristics of the Defendant reveal a person who repeatedly demonstrates a disrespect for the law and for other people as she engages in dishonest and fraudulent activity. The Defendant has shown a willingness to violate the law for a purpose as seemingly innocuous as "helping" a friend get a car out of impound as

she does to gain access to more than $100,000 to which she has no justifiable right.

The Court finds that Criminal History Category III, which was used to calculate the advisory guideline range, does not adequately reflect the seriousness of the defendant's criminal history or the frequency with which the defendant has committed crimes, and also finds that the nature and circumstances of the Defendant demonstrate that the Defendant presents a high risk for future criminal behavior. Thus, the Court is contemplating a variance from the advisory guideline range for the bank fraud offenses. However, the Court cannot conclusively determine, without the benefit of a sentencing hearing, whether a sentence above the advisory guideline is necessary to meet the purposes of punishment, including the need to protect the public from further crimes of the Defendant and to afford adequate deterrence to criminal conduct. The Court has yet to determine the advisory guideline range. The Court must rule on the Defendant's objections to the PSR and calculate the advisory guideline range on the basis of its rulings. The Court must also hear counsel's arguments or evidence for a particular sentence, hear the Defendant's arguments or evidence in mitigation of her sentence, and consider all the § 3553(a) factors before imposing a sentence. The sentence remains open to being influenced by what happens at the sentencing hearing.

**E. Conclusion**

For the foregoing reasons, the Court agrees that the Criminal History Category under-represents the seriousness of the Defendant's actual criminal history, but withholds ruling on the Government's Motion for Upward Departure [DE 80] until the time of the sentencing hearing and an opportunity to hear all the evidence and argument.

SO ORDERED on April 17, 2009.

                               s/ Theresa L. Springmann
                              THERESA L. SPRINGMANN
                              UNITED STATES DISTRICT COURT