# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:07-CR-62-TS |
| | ) | |
| ANNA LAFAIVE | ) | |
| a/k/a Phyllis Click | ) | |

## OPINION AND ORDER

The Defendant has been convicted of fraud and owes the Government restitution. Based on the Defendant's outstanding restitution balance, the Government filed an Application for Writ of Continuing Garnishment [ECF No. 113] directed to MetLife and seeking to garnish an annuity issued to Anna LaFaive, also known as Anna Gabbard, which had been awarded to her after the wrongful death of one of her children. The Government then received information that MetLife is not in control or custody of the annuity, but is the third party administrator for Executive Life Insurance Company of New York (ELNY), which is in control or custody of the annuity. The Government filed Application for Writ of Continuing Garnishment [ECF No. 118] directed to ELNY. In accordance with the Fair Debt Collection Procedures Act (FDCPA), the Government provided notices of post-judgment remedies to the Defendant, which included the exemptions she could claim under 28 U.S.C. § 3014(a). The notices also advised the Defendant that to obtain a hearing she had to notify the Court within twenty days after receiving the notice, and that she could request that the proceeding to take her property be transferred to the federal judicial district in which she resided if she lived outside the Northern District of Indiana. A form response provided with the notices contained three separate boxes that she could mark to indicate her response: one for noting her position that the annuity qualifies under an applicable exemption; a second for requesting that the proceedings be transferred; and a third requesting a

hearing on default judgment. The Defendant checked all three boxes.

This matter is before the Court on the Defendant's Answers and Objections to the Government's Writ of Garnishment and request for transfer to the Eastern District of Kentucky, the district where she is currently incarcerated [ECF Nos. 117, 120]. The Government submits in Response [ECF No. 121] that because the Defendant is only in the Eastern District of Kentucky based on her incarceration, her state of residence should be determined by her residence prior to the imprisonment. The Government argues that the exemptions cited by the Defendant do not apply to the annuity.

### A. Request for Transfer

The FDCPA, § 3004(b)(2), states that "[i]f the debtor so requests, within 20 days after receiving the notice described in section 3101(d) or 3202(b), the action or proceeding in which the writ, order, or judgment was issued shall be transferred to the district court for the district in which the debtor resides." 28 U.S.C. § 3004(b)(2). The Government argues that, despite this provision, it is not appropriate to transfer this case because the Defendant's place of residence for purposes of § 3004(b)(2) should be determined by looking to her place of residence prior to incarceration. In support of its position regarding the Defendant's place of residence, the Government cites two cases from this Circuit that discuss a prison inmates's residence for purposes of federal diversity jurisdiction under 28 U.S.C. § 1332. *See Singletary v. Cont'l Ill. Nat'l Bank and Trust Co. of Chi.*, 9 F.3d 1236, 1238 (7th Cir. 1993) (finding that it was incorrect to treat the state in which the defendants were imprisoned as the state of their citizenship for purposes of determining whether complete diversity was satisfied); *Sullivan v. Freeman*, 944

F.2d 334, 337 (7th Cir. 1991) (determining that since domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile).

Although residence has never been the equivalent of citizenship for purposes of diversity jurisdiction, *see Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399–400 (1952); *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996) ("'Citizenship' for purposes of § 1332 means domicile rather than residence."), § 3004(b)(2) is not a jurisdictional provision; it is a venue provision. However, there also exists authority for the proposition that a prisoner resides, for purposes of venue, in his district of domicile, not his district of incarceration. *See Holmes v. US Bd. of Parole*, 541 F.2d 1243, 1249–50 (7th Cir. 1976) ("We see no reason for purposes of venue under section 1391 to ascribe to [the defendant] the residence of his district of incarceration rather than the district of his domicile."), overruled on other grounds by *Arsberry v. Sielaff*, 586 F.2d 37 (7th Cir. 1978); *Brimer v. Levi*, 555 F.2d 656, 657–58 (8th Cir. 1977) (finding venue improper in the district where a prisoner is confined because presence is involuntary and temporary); *Kahane v. Carlson*, 527 F.2d 492, 493–94 (2nd Cir. 1975) (noting that for purposes of § 1391, residence is often interpreted as equivalent to domicile); *Ellingburg v. Connett*, 457 F.2d 240, 241 (5th Cir. 1972) (for purposes of venue, one does not change his residence to his place of incarceration); *Cohen v. United States*, 297 F.2d 760, 774 (9th Cir. 1962) ("One does not change his residence to the prison by virtue of being incarcerated there."); *Keys v. Dep't of Justice*, 288 Fed. Appx. 863 (3rd Cir. 2008) ("Prisoners . . . generally are deemed to be residents, not of their place of incarceration, but of their place of domicile immediately before their incarceration."); *Harris v. Lappin*, 2008 WL 4371503, at *7 n.4 (N.D. Va. Sep. 22, 2008) (noting that the weight of authority has found that a prisoner's place of incarceration is not his residence

3

for purposes of venue); *see also Grinnell Mut. Reinsurance Co. v. Ferando*, 2009 WL 4021351, *5 (C.D. Ill. 2009) (finding that venue did not lie in court's district because it was not appropriate to treat the defendant's place of incarceration as his residence for venue purposes); *Bailey v. United States*, 1992 WL 331320, at *1 (D. Kan., Oct. 23, 1992) (finding that because the plaintiff offered nothing that reasonably supported an intention to be domiciled in the district of incarceration, his residence for venue purposes was his last chosen place of residence prior to his incarceration); *Turner v. Kelley*, 411 F.Supp. 1331, 1332 (D. Kan. 1976) ("residence involves some choice, again like domicile, and . . . presence elsewhere through constraint has no effect upon it.") (citation omitted).

The Defendant's residence prior to her incarceration was in Michigan, and the mere fact that the Bureau of Prisons has currently designated her to a facility in Kentucky does not make the latter state the "district in which the debtor resides" for purposes of venue under § 3004(b)(2). However, the presumption regarding domicile is rebuttable, *see Sullivan*, 944 F.3d at 337, and the Defendant states that, upon her release, she intends to remain in Kentucky with immediate family members who have been life long residents of Kentucky and currently reside there. (Def.'s Resp. ¶¶ 6, 7, ECF No. 158.) Although not provided under penalty of perjury, the Court will accept the Defendant's representation of intended residence only for the limited purpose of determining this issue and only as long as evidence to the contrary is not submitted. During her sentencing hearing, she requested placement in a facility near her relatives, specifically mentioning the facility in Lexington, Kentucky. Thus, it appears that the Defendant's presence in Kentucky is not simply the result of involuntary and temporary incarceration, but is the place she has consciously and wilfully chosen to reside.

4

Having determined that the Eastern District of Kentucky is the place where the Defendant resides for purposes of § 3004(b)(2), the Court must still decide whether transfer under § 3004(b)(2) would be inconsistent with other federal provisions, including the Mandatory Victims Restitution Act, 18 U.S.C. §§ 3611–3615. This analysis is necessary because § 3001(b) of the FDCPA provides that "[t]o the extent that another Federal law specifies procedures for recovering on a claim or a judgment for a debt arising under such law, those procedures shall apply to such claim or judgment to the extent those procedures are inconsistent with this chapter." 28 U.S.C. § 3001(b). In addition, § 3003(b) states that the Act "shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law . . . to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case."

The Government is permitted to use civil garnishment as a post-judgment remedy within an underlying criminal case, and has done so in this case. *United States v. Meux*, 597 F.3d 835, 837 (7th Cir. 2010). Congress has given sentencing courts continuing jurisdiction over defendants they have sentenced, and they have an array of options they may use upon finding that a defendant is in default on payment of a fine or restitution. *See* 18 U.S.C. §§ 3611–3615 (post-sentence administration provisions that were amended to complement the MVRA). Some district courts have held that this means a transfer of collection proceedings would be inconsistent with the court's inherent and statutory authority to enforce its own judgments, and that § 3004(b)(2) must therefore give way to the MVRA. *See United States v. Poulsen*, 2010 WL 1849294, at *4 (S.D. Ohio May 3, 2010) (denying a motion to transfer because transfer would interfere with the Court's obligation under the MVRA to ensure that the defendant complied

5

with the judgment for restitution); *United States v. Woods*, 2010 WL 2510083 (E.D.N.C. Apr. 9, 2010) (finding that the sentencing court was in the best position to make certain that its judgment was enforced in an efficient manner using all means available under law); *United States v. Jeburk*, 2008 WL 4499982, at *1 (S.D. Ga. Oct. 6, 2008) (denying transfer under § 3004(b)(2) on ground that provisions of the MVRA take precedence over provisions of the FDCPA); *United States v. Tedder*, 2004 WL 415270 (W.D. Wis. Feb. 26, 2004) (finding that granting transfer would pose a real risk of curtailing or limiting the government's right to collect the fine and forfeiture imposed on the defendant). In denying transfer, the *Woods* court also noted that § 3004(b)(2) is a venue provision, and that compelling reasons to transfer were not present.

Another district court has disagreed with the reasoning of the above courts, concluding that the transfer provision of the FDCPA does not conflict with the MVRA and does not curtail or limit the government's rights under that statute. *United States v. Gipson*, 714 F. Supp. 2d 571 (E.D. Va. 2010). In *Gipson*, the court stated that, under the plain language of §§ 3001(b) and 3003(b), the transfer provision had to give way to another federal law only to the extent the other law delineates procedures that are "inconsistent" with the FDCPA, and insofar as the FDCPA would "curtail or limit" a right of the United States to collect criminal restitution arising under that other law. The court noted that the gravamen of the MVRA is to require sentencing courts to impose restitution on certain criminal offenders. 714 F. Supp. 2d at 574. The MVRA also specifies procedures for preparing and issuing restitution judgments and provides some enforcement provisions while leaving other statutes, including the FDCPA, to fill the gaps. *Id.* However, the MVRA is "entirely silent with respect to whether, and in what circumstances, the sentencing court may transfer jurisdiction over a collection proceeding to another judicial

6

district." *Id.* Thus, although the otherwise mandatory transfer language of § 3004(b)(2) is subject to exception, none of the MVRA provisions provide such an exception because they are not "inconsistent with" the transfer provision. Nor is it clear that transfer frustrates the objectives of the MVRA. As the *Gipson* court noted, the FDCPA, including its transfer provision, was in place when Congress passed the MVRA. 714 F. Supp. 2d at 575. Thus "[i]f Congress believed that the FDCPA's transfer provision would frustrate achievement of the MVRA's objectives, then surely Congress would have prohibited transfer in the MVRA. Instead, the MVRA is silent, and the FDCPA expressly provides for transfer." *Id.* at 576 (holding that the MVRA did not implicitly override the FDCPA's transfer provision).

The *Gipson* court went on to discuss another provision of the FDCPA that grants district courts plenary authority to "make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure" under the statute. 28 U.S.C. § 3013. The court opined that this provision would allow a district court to deny a timely transfer motion for good cause, which ordinarily exists when transfer is requested merely to delay or frustrate efforts to collect on restitution judgments. *Id.* Thus the burden is shifted from the party requesting transfer to the party opposing transfer. And because the government can oppose a motion to transfer if granting the request would frustrate the government's efforts to collect a restitution judgment, the transfer provision does not impermissibly curtail or limit any right of the United States. *Id.* The *Gipson* court ultimately granted the transfer request because the Government did not show good cause to deny the motion.

This Court agrees with the *Gipson* court that the MVRA does not explicitly or implicitly override the transfer provision of the FDCPA. With no conflicting provision to override the

7

mandatory transfer language, the Government must show good cause why the Court should not grant the Defendant's transfer request. The Government has not indicated how a transfer of the garnishment proceedings to the Eastern District of Kentucky would pose any risk of curtailing or limiting its right to collect restitution from the Defendant. Given the relative uncertainty in the case law and in the interests of justice, the Court will grant the Government an opportunity to address this issue.

**B.     Objections/Exemptions**

Because the Court is withholding a determination regarding transfer, and because the Defendant may be entitled to a hearing, it is not appropriate to address the Defendant's objections to the motions for garnishment in this Opinion and Order.

## CONCLUSION

For the foregoing reasons, the Court withholds ruling on Defendant's request to transfer the garnishment proceedings to the Eastern District of Kentucky and grants the Government 14 days from the issuance of this Opinion and Order to brief the transfer issue. The Defendant is granted 28 days from receipt of the Government's brief to file a response. The garnishee, ELNY, is ordered to continue to hold the property at issue pending further court order. The Clerk is directed to mail a copy of this Order to the Defendant.

SO ORDERED on March 31, 2011.

s/ Theresa L. Springmann<br>
THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT